UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEFF FARRELL CHURCHILL,

                Plaintiff,

   v.

CAROLYN W. COLVIN, Commissioner of Social Security, [1]

                Defendant.

Case No. 3:12-cv-05580-KLS

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his application for supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and that this matter should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On April 8, 2008, plaintiff filed an application for SSI benefits, alleging disability as of January 1, 2000, due to a bipolar disorder. See Administrative Record ("AR") 19, 139, 155.[2]

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit. **The Clerk of Court is directed to update the docket accordingly.**

[2] Plaintiff previously had filed an application for SSI benefits and another one for disability insurance benefits on January 26, 2005, both of which were denied at the administrative level, including in a decision by an administrative law judge ("ALJ") dated August 9, 2007, following a hearing. See AR 77-81, 129, 133. Although not reflected in the record, a request for review of that decision was denied by the Appeals Council, and a complaint filed in this

ORDER - 1

That application was denied upon initial administrative review on August 20, 2008, and on reconsideration on November 3, 2008. See AR 19, 84, 91. A hearing was held before an administrative law judge ("ALJ") on March 25, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 32-73. Also at that hearing, plaintiff amended his alleged onset date of disability to January 1, 2005. See AR 37.

In a decision dated June 24, 2010, the ALJ determined plaintiff to be not disabled. See AR 19-27. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 4, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 416.1481. On July 13, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #3. The administrative record was filed with the Court on September 17, 2012. See ECF #13. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues[3] the Commissioner's final decision should be reversed and remanded for further administrative proceedings based on the following asserted errors:

   (1)   The ALJ failed to properly consider the mental functional evaluation reports from Myra P. Hale, MA, CDPI, and Mark Zimmerman, LMHC;

   (2)   The ALJ failed to properly consider the medical evidence from Ellen Hargrave, M.D., and David D. Moore, Ph.D.;

   (3)   The ALJ mischaracterized the mental functional assessment provided by Linda Jansen, Ph.D.;

   (4)   The ALJ omitted significant mental functional limitations from the hypothetical question she posed to the vocational expert at the hearing;

---

Court seeking judicial review thereof was dismissed without prejudice on August 31, 2010. See ECF #15, p. 2 n. 1 (citing 3:09-cv-05311-RJB, Docket #22). Neither application is the subject of this case.

[3] Although plaintiff requests oral argument in this case, the Court finds such argument to be unnecessary.

ORDER - 2

(5) The vocational expert failed to identify the job of dishwasher by its proper Dictionary of Occupational Title ("DOT") number in response to the hypothetical question posed by the ALJ; and

(6) The DOT's description of the job of janitor identified by the vocational expert also in response to the posed hypothetical question, conflicts with the medical evidence in the record showing plaintiff's ability to perform even simple tasks is impaired.

For the reasons set forth below, however, the Court finds the ALJ did not err in finding plaintiff to be not disabled, and therefore affirms the Commissioner's final decision.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld.

ORDER - 3

Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [4]

I.   The Evaluation Reports from Ms. Hale, Mr. Zimmerman and Dr. Hargrove

The record contains a psychological/psychiatric evaluation report dated November 5, 2009, signed – and thus apparently completed – by both Mr. Zimmerman and Dr Hargrave. See AR 641-47.  The ALJ rejected the mental functional limitations assessed in that report in part because the report was not completed by an acceptable medical source. See AR 25 (citing record exhibit 19F).  A licensed physicians and a licensed or certified psychologist is an "acceptable medical source." See 20 C.F.R. § 416.913(a), (d).  The opinion of a source – including an "other medical source," – who is not an "acceptable medical source" may be given less weight than the opinion of a source who is an acceptable medical source. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996).

Clearly, Dr. Hargrave – who co-authored the November 5, 2009 evaluation report – is an acceptable medical source, given that she is a psychologist, and there is no indication she is not properly licensed or certified.  Accordingly, the ALJ erred in rejecting that report on this basis.  The Court finds this error to be harmless, however, because as discussed below she provided other, valid reasons for rejecting it. See Stout v. Commissioner, Social Security Admin., 454

---

[4] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them.  It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may not try the case de novo, neither may it abdicate its traditional function of review.  It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 4

F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (any error on part of ALJ would not have affected "ALJ's ultimate decision.").

Plaintiff argues that because the ALJ improperly rejected the November 5, 2009 evaluation report based on her erroneous belief that Dr. Hargrave was not an acceptable medical source, she in effect gave that report "no consideration at all." ECF #15, p. 8.  But the ALJ also rejected it because Mr. Zimmerman and Dr. Hargrove "did not prepare detailed evaluations, but instead completed the state's check-off psychological evaluation form," and because it appeared their functional assessment was "based largely on [plaintiff's] subjective self-report when he was trying to qualify for public assistance benefits." AR 25; see Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983) (expressing Court of Appeal's preference for individualized medical opinions over check-off reports); see also Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ need not accept opinion of even treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings"); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ may disregard medical opinion premised on claimant's complaints where record supports ALJ in discounting claimant's credibility); Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999).[5]

---

[5] As pointed out by defendant, plaintiff has not argued in his opening brief that the ALJ erred in determining him to be not fully credible regarding his subjective complaints and allegations of disability, nor has he argued therein that the other stated reasons the ALJ gave for rejecting the November 5, 2009 evaluation report were improper.  Any challenge to those reasons thus is waived. See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to court's order was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).  The Court, furthermore, finds the reasons the ALJ gave here to be supported by the substantial evidence in the record, given that the report Mr. Zimmerman and Dr. Hargrave completed largely is based on plaintiff's self-reports of his alleged symptoms and limitations – as

ORDER - 5

The record also contains another state agency psychological/psychiatric evaluation form completed by Mr. Zimmerman – but not Dr. Hargrave – in late January 2009 (see AR 634-37), and two such forms completed by Ms. Hale in late November 2006 (see AR 627-30) and again in early April 2007 (see AR 222-25).  As with the November 5, 2009 evaluation report completed by Mr. Zimmerman and Dr. Hargrave, the ALJ rejected these other three reports in part on the basis that Mr. Zimmerman and Ms. Hale are not acceptable medical sources. See AR 25 (citing record exhibits 2F, 17F-18F).  Although Mr. Zimmerman and Ms. Hale are neither physicians nor psychologists, this alone is not a proper basis for rejecting their reports. See Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939 *3, 5.[6]

The ALJ, however, provided the same additional reasons for rejecting the functional assessments contained in these evaluation reports that she did in regard to the November 5, 2009 evaluation report from Mr. Zimmerman and Dr. Hargrave, namely the lack of detail contained therein, the fact that they were provided on check-off reports and their reliance on the subjective self-reports from plaintiff. See AR 25 (citing record exhibits 2F, 17F-18F).  As with the November 5, 2009 evaluation report, furthermore, plaintiff does not argue in his opening brief that these reasons for rejecting the other reports from Mr. Zimmerman and Ms. Hale were not

---

opposed to objective clinical findings – many of which expressly were noted by Mr. Zimmerman and Dr. Hargrave to be not observed at all or to the extent claimed. See AR 23-34, 641-47.

[6] The opinion of an "other source", including "other medical sources" who is "not technically deemed to be" an "acceptable medical source," is considered "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the" record. Id. at *3.  Further, although"[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals,' . . . depending on the particular facts in a case, . . . an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." Id. at *5.  The ALJ in this case did not state he was discounting the evaluation reports provided by Mr. Zimmerman and Ms. Hale in relation to any that had been performed by an acceptable medical source, but rather she merely noted the fact that they did not come from the latter type of medical source.

ORDER - 6

1  proper, and therefore again any challenge thereto is waived.[7] See Carmickle, 533 F.3d at 1161

2  n.2; Paladin Associates., Inc., 328 F.3d at 1164; Kim, 154 F.3d at 1000.

3  II.       The Evaluation Report from Dr. Moore

4  In addition to the above state psychological/psychiatric evaluation forms, the record

5  contains one from Dr. Moore, dated February 1, 2008, which as noted by the ALJ, contains the

6  opinion that plaintiff has a "marked level [of] cognitive impairment and [a] marked to severe

7  level of social impairment." AR 25; see also AR 267-72.  With respect to that opinion, the ALJ

8  stated it was "not supported by the objective medical evidence" and thus she gave it "little

9  weight." AR 25.  The Court agrees this reason for rejecting Dr. Moore's opinion is insufficient,

10 as it gives little guidance as to the specific evidence the ALJ actually reviewed and found to be

11 inconsistent with that opinion. See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988).[8]  Once

---

[7] Also as with the November 5, 2009 evaluation report, the Court finds these additional reasons to be supported by the substantial evidence in the record given that the other reports completed by Ms. Hale and Mr. Zimmerman are largely based on plaintiff's properly discredited self-reports. See AR 23-24, 222-25, 627-30, 634-37. As noted by plaintiff in his *reply* brief, some of the evidence the ALJ relied on to discount his credibility – and thus to reject the evaluation reports of Ms. Hale – are dated prior to April 8, 2008, the date he filed his most recent application for SSI benefits. Plaintiff argues that because he "would not be eligible for payments until the first month after becoming eligible for SSI" benefits if he were found to be disabled, "the focus of the medical evidence should be on and after the date of filing" thereof, and therefore "the discussion by the ALJ of records before 2008 [see AR 23-24] is not relevant to th[is] decision." ECF #17, p. 2. But the issue of when a claimant may first become eligible to *receive* SSI benefits is entirely different from the issue of *whether* one is in fact eligible for such benefits in the first place. Nor do the regulations cited by plaintiff to support his argument here indicate otherwise. See 20 C.F.R. § 416.203, § 416.501. Plaintiff, furthermore, alleged an original onset date of disability of January 1, 2000, indicating that he believed he was disabled at least back that far, and even his amended alleged onset date of disability is more than three years prior to the filing of his current application. Given that plaintiff's credibility plays an important part in this case as discussed above, the entire period during which plaintiff is alleging he has been unable to work is indeed relevant. Plaintiff also tries to have it both ways. On the one hand, he asserts the ALJ cannot consider medical evidence prior to April 8, 2008. On the other hand, he asserts Ms. Hale's evaluation reports, both of which date well prior to that date, are relevant "to the extent that [they] confirm[]the longevity of the functional limitations" he alleges he has. ECF #17, p. 2. Plaintiff cannot reasonably argue such evidence should be considered only if it is of benefit to his claim, but not if it supports the ALJ's findings. See Vidal v. Harris, 637 F.2d 710, 712 (9th Cir. 1981) ("The court must look at the record as a whole and not merely the evidence tending to support a[n ALJ's] finding"); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) ("[I]n determining whether there is substantial evidence to support the [ALJ's] finding a reviewing court must consider both evidence that supports, and evidence that detracts from, the [ALJ's] conclusion.").

[8] It is insufficient for an ALJ to reject the opinion of a physician by merely stating without more that there is a lack of objective medical evidence to support that opinion. As the Ninth Circuit stated in Embrey:

ORDER - 7

more, though, the Court finds the ALJ's error here to be harmless.

This is because as noted by defendant Dr. Moore opined that at most plaintiff would be so limited for a period of nine months. See AR 271. To be found disabled, however, a claimant must establish he or she is unable to "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death *or which has lasted or can be expected to last for a continuous period of not less than 12 months*." 42 U.S.C. § 423(d)(1)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (emphasis added). Dr. Moore's opinion shows he did not believe this was the case for plaintiff. While this is not a reason the ALJ gave for rejecting that opinion,[9] the Court finds no reasonable ALJ would have credited it given the duration of limitation indicated, and thus it would not have affected the ALJ's "ultimate decision." Parra, 481 F.3d at 747.[10]

III. Dr. Jansen's Mental Functional Assessment

With respect to the functional assessment referenced above performed by Dr. Jansen in early August 2008, the ALJ found as follows:

---

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. . . .

Id. at 421-22 (internal footnote omitted). The Court further notes that Dr. Moore's evaluation report does contain objective evidence that could be deemed supportive of the functional limitations he assessed in the form of both psychological testing results and mental status examination findings. See AR 270, 272; see also Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) ("The results of a mental status examination provide the basis for a diagnostic impression of a psychiatric disorder, just as the results of a physical examination provide the basis for the diagnosis of a physical illness or injury.").

[9] See Pinto v. Massanari, 249 F.3d 840 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision.").

[10] See also Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1056 (9th Cir. 2006) (noting in context of ALJ's failure to address competent lay witness testimony that "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination," and that ALJ's error in that case was not harmless because if testimony of lay witness was fully credited, "a reasonable ALJ could find" claimant was precluded "from returning to gainful employment").

ORDER - 8

> Dr. Jansen opined that the claimant did not have any particular difficulty with attention or concentration, may have some difficulty performing complex tasks due to a psychotic thought process, and would have difficulty interacting with the public and co-workers on a continual basis (Ex. 6F, [p]. 4). Dr. Jansen'[s] opinion is granted significant weight, as it is largely supported by the medical evidence of record which clearly establishes the claimant's own belief that he does not need treatment, and his failure to regularly attend treatment, as well as his continued possible drug use.

AR 25. Plaintiff argues that in so finding, the ALJ mischaracterized Dr. Jansen's functional assessment by referencing only selected portions thereof, which as noted above an ALJ cannot do. See Vidal, 637 F.2d at 712; Day, 522 F.2d at 1156. Specifically, plaintiff asserts the ALJ should have included the fact that Dr. Jansen diagnosed him with a recurrent, moderate major depressive disorder with psychotic features, and gave him a global assessment of functioning ("GAF") score of 49. See AR 279. The Court finds no error here.

First, an ALJ "need not discuss *all* evidence presented" to him or her, but rather must only explain why "significant probative evidence has been rejected." Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original); see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984). Further, "[t]he mere existence of an impairment," such as the above diagnosis made by Dr. Jansen, "is insufficient proof of a disability." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). Accordingly, the ALJ did not err in failing to mention that diagnosis expressly, nor is there any evidence that she rejected it. Indeed, the ALJ found that diagnosis to be a severe impairment at step two of the sequential disability evaluation process, because it significantly interfered with plaintiff's ability to perform basic work activities on a regular and continuing basis.[11]

---

[11] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of

ORDER - 9

As for the GAF score given by Dr. Jansen, such a score is "a *subjective* determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted) (emphasis added).  In addition, while it is "relevant evidence" of the claimant's ability to function mentally, and may be "of considerable help" to the ALJ in, for example, assessing a claimant's residual functional capacity, "it is not essential" to the accuracy thereof.  England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007); Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002).  As such, the failure of an ALJ to specifically reference a GAF in assessing a claimant's residual functional capacity "standing alone" does not make that assessment inaccurate. Howard, 276 F.3d at 241.

Again, the Court finds no error here.  First, as discussed above, the ALJ properly found plaintiff to be not fully credible regarding his subjective complaints, a determination that plaintiff has not challenged in this case.  Thus, given that as just noted a GAF score is a *subjective* determination of the claimant's ability to function, the ALJ in this case was not required to rely on the one Dr. Jansen gave or to find it probative of his ability to function.  The more detailed narrative opinion of plaintiff's ability to function Dr. Jansen provided, furthermore, which the Court finds the ALJ accurately summarized (see AR 25, 279), is consistent with the ALJ's own residual functional capacity assessment discussed in greater detail below.

Plaintiff further asserts error based on the ALJ's failure to specifically note Dr. Jansen found that "difficulties persisting throughout a normal work day might be attributable to vegetative symptoms of depression." ECF #15, p. 11.  What Dr. Jansen actually stated, however,

---

the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii), (c); SSR 96-3p, 1996 WL 374181 *1.

ORDER - 10

was that plaintiff's "[r]eports of anxiety and possible hypomanic symptoms did not meet criteria ffor an anxiety disorder or bipolar disorder," that the results of psychological testing performed "did not indicate particular difficulty with attention or concentration," and therefore that "*any* difficulty in persisting throughout a normal work day *might* be attributable to" such symptoms. AR 279. That is, Dr. Jansen did not actually find plaintiff had such difficulty, but that if he did then it would be due to his reported vegetative symptoms.

Again, there is no error on the ALJ's part here. Nor did the ALJ err in failing to mention the fact that Dr. Jansen also noted plaintiff reported that he "does currently isolate himself which would lead to difficulty interacting with the public or with co-workers on a continual basis." Id. First, as noted above, the ALJ expressly stated in her decision that Dr. Jansen had found plaintiff would have difficulty with such interactions. See AR 25. Second, as discussed in greater detail below, the ALJ assessed plaintiff with social functional limitations that are not inconsistent with what Dr. Jansen found or with the hypothetical question that was posed to the vocational expert at the hearing. See AR 22, 59. Thus, the Court rejects plaintiff's assertion that the hypothetical question "paints a far different picture" than what Dr. Jansen found. ECF #15, p. 11.

IV. The Hypothetical Question Posed to and Jobs Identified by the Vocational Expert

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity

ORDER - 11

("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or

ORDER - 12

she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ in this case found plaintiff had the residual functional capacity:

> **. . . to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform some simple and complex tasks. He is limited to occasional interaction with coworkers and supervisors and to minimal interaction with the general public.**

AR 22 (emphasis in original). At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 59. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – could perform the jobs of janitor and dishwasher. See AR 59-61. Based on the vocational expert's testimony regarding those jobs, the ALJ found that plaintiff would be able to perform other jobs existing in significant numbers in the national economy, and therefore that he was not disabled. See AR 26.

Plaintiff argues the ALJ erred in so finding, because although as discussed above she found his major depressive disorder to be a severe impairment that significantly interfered with his ability to perform basic work activities on a regular and continuing basis at step two of the sequential disability evaluation process, that finding was not reflected in the limitations the ALJ included in her RFC assessment. But the determination an ALJ makes at step two is merely a *de minimis* screening device used to dispose of groundless claims. See Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). It thus serves a wholly different purpose than the more detailed findings required by the ALJ in determining the claimant's residual functional capacity at steps four and five. See 1996 WL 374184 *4 (noting that "the limitations identified [at step 2 of the sequential evaluation process] are not an RFC assessment but are used to rate the severity of

ORDER - 13

mental impairment(s) at [that step]," and that "[t]he mental RFC assessment used at steps 4 and 5 . . . requires a more detailed assessment"). That is, at step two when an impairment is found to significantly impact a claimant's ability to perform work activities, that finding merely serves to allow the claimant to continue in the sequential disability evaluation process.

Indeed, as noted above, the term "significant" as it relates to the ability to perform basic work activities at step two merely refers to whether or not a claimant's impairment is significant enough to pass the *de minimis* screening employed at that step. A step two finding such as the ALJ's in this case thus is not intended to indicate the much more specific level of limitation that is required of the residual functional capacity assessment at step 4 and step 5, but rather simply serves to get the claimant there. Nor has plaintiff shown the reliable medical or other evidence in the record supports any greater limitations than those the ALJ did include in his RFC assessment in this case. As such, the Court finds no error here.

Plaintiff also argues the ALJ erred in relying on the vocational expert's testimony that he could perform the job of dishwasher – which the vocational expert identified under DOT number 318.687-010 – asserting there is no job identified by that number in the DOT. But as defendant notes, that DOT number does exist and it identifies kitchen helper, a job which involves among other duties "[w]ash[ing] pots, pans, and trays by hand," "[s]crap[ing] food from dirty dishes and wash[ing] them by hand or plac[ing] them in racks or on conveyor to dishwashing machine." Id. Clearly, these duties are consistent with a job described as being that of dishwasher, even though it is called by another name in the DOT.

In addition, plaintiff argues the ALJ erred in finding him to be capable of performing the job of janitor, asserting it is an unskilled job requiring the performance of simple tasks (see DOT 381.687-014), whereas the medical evidence shows his ability to perform such tasks is impaired.

ORDER - 14

Much of that evidence, however, comes from the functional assessments performed by Ms. Hale, Mr. Zimmerman and Dr. Hargrave, with respect to which the ALJ committed no harmful errors in rejecting. See AR 224, 270, 424. Further, the first functional assessment Ms. Hale provided indicated no problems performing simple tasks (see AR 645 (noting that no limitations in that area were either reported or observed)), and the weight of the remaining medical opinion source evidence in the record, including that from Dr. Jansen, shows the same. See AR 279, 387, 389, 490; but see AR 270. Thus, the ALJ did not err here as well, and therefore did not err in finding plaintiff to be not disabled at step five.

## CONCLUSION

For the foregoing reasons, the Court finds the ALJ properly concluded plaintiff was not disabled. Accordingly, the Commissioner's final decision hereby is AFFIRMED.

DATED this 6th day of May, 2013.

                                        Karen L. Strombom
                                      United States Magistrate Judge

ORDER - 15